IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ENRIQUE PERALTA | § | |
| TDCJ No. 2267080, | § | |
| Petitioner, | § | |
| | § | |
| V. | § | No. 3:22-cv-513-S-BN |
| | § | |
| DIRECTOR, TDCJ-CID, | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Petitioner Enrique Peralta – a Texas prisoner – was charged in Dallas County with Sexual Assault of a Child and Aggravated Sexual Assault of a Child. Dkt. No. 11-28 at 4; Dkt. No. 11-31 at 4. Peralta pleaded not guilty, but a jury found him guilty on two counts and sentenced him to twenty years and forty years of imprisonment. *State of Texas v. Enrique Peralta*, F-1875329-S, F-1875330-S (282nd Jud. Dist. Court., Dallas Cty., Apr. 2, 2019).

Peralta's convictions and sentences were affirmed on direct appeal as modified. *See Peralta v. State*, Nos. 05-19-00623-CR and 05-19-00624-CR, slip op. (Tex. App. – Dallas 2020, pet. ref'd). Peralta filed petitions for discretionary review (PDR), which the Texas Court of Criminal Appeals (CCA) denied. *See Peralta v. State*, Nos. PD-0715-20, PD-0716-20 (Tex. Crim. App. 2020).

Peralta filed state habeas applications challenging his convictions. The CCA denied those applications without written order. *See Ex parte Peralta*, WR-93,321-01-02 (Tex. Crim. App. Dec. 22, 2021).

Peralta then filed this application for federal habeas relief pursuant to 28 U.S.C. § 2254. *See* Dkt. Nos. 4, 8. The Court referred this action to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) pursuant to a standing order of reference from United States District Judge Karen Gren Scholer.

The State responded to Peralta's application. *See* Dkt. No. 14. And Peralta filed a reply. *See* Dkt. No. 27.

The undersigned now enters these findings of fact, conclusions of law, and recommendation that the Court should deny Peralta's application for a writ of habeas corpus.

## Legal Standards and Analysis

"Federal habeas features an intricate procedural blend of statutory and caselaw authority." *Adekeye v. Davis*, 938 F.3d 678, 682 (5th Cir. 2019). In the district court, this process begins – and often ends – with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), under which "state prisoners face strict procedural requirements and a high standard of review." *Adekeye*, 938 F.3d at 682 (citation omitted).

Under the AEDPA, where a state court has already rejected a claim on the merits, a federal court may grant habeas relief on that claim only if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Adekeye*, 938 F.3d at 682 ("Once state remedies are exhausted, AEDPA limits federal relief to cases where the state court's decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' or was 'based on an unreasonable determination of the facts in light of the evidence presented.'" (citation omitted)); *see also Allen v. Vannoy*, 659 F. App'x 792, 798-99 (5th Cir. 2016) (per curiam) (describing Section 2254(d) as "impos[ing] two significant restrictions on federal review of a habeas claim ... 'adjudicated on the merits in state court proceedings'").

And "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *see also Sanchez v. Davis*, 936 F.3d 300, 305 (5th Cir. 2019) ("[T]his is habeas, not a direct appeal, so our focus is narrowed. We ask not whether the state court denial of relief was incorrect, but whether it was unreasonable – whether its decision was 'so lacking in justification' as to remove 'any possibility for fairminded disagreement.'" (citation omitted)).

A state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004); *see also*

*Lopez v. Smith*, 574 U.S. 1, 2 (2014) (per curiam) ("We have emphasized, time and time again, that the [AEDPA] prohibits the federal courts of appeals from relying on their own precedent to conclude that a particular constitutional principle is 'clearly established.'" (citation omitted)).

"A state court unreasonably applies clearly established Supreme Court precedent when it improperly identifies the governing legal principle, unreasonably extends (or refuses to extend) a legal principle to a new context, or when it gets the principle right but 'applies it unreasonably to the facts of a particular prisoner's case.'" *Will v. Lumpkin*, 978 F.3d 933, 940 (5th Cir. 2020) (quoting *Williams v. Taylor*, 529 U.S. 362, 407-08 (2000); citation omitted)). "But the Supreme Court has only clearly established precedent if it has 'broken sufficient legal ground to establish an asked-for constitutional principle.'" *Id.* (quoting *Taylor*, 569 U.S. at 380-82; citations omitted).

"For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.... A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citations and internal quotation marks omitted). "Under § 2254(d), a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the

Supreme] Court." *Id.* at 102 (internal quotation marks omitted); *see also Evans v. Davis*, 875 F.3d 210, 216 (5th Cir. 2017) (recognizing that Section 2254(d) tasks courts "with considering not only the arguments and theories the state habeas court actually relied upon to reach its ultimate decision but also all the arguments and theories it could have relied upon" (citation omitted)).

The Supreme Court has further explained that "[e]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Richter*, 562 U.S. at 101 (internal quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. The Supreme Court has explained that, "[i]f this standard is difficult to meet, that is because it was meant to be," where, "[a]s amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," but "[i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents," and "[i]t goes no further." *Id.* Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *accord Burt v. Titlow*, 571 U.S. 12, 20 (2013) ("If this standard is difficult to meet – and it is – that is because it was

meant to be. We will not lightly conclude that a State's criminal justice system has experienced the extreme malfunction for which federal habeas relief is the remedy." (internal quotation marks, brackets, and citations omitted)).

As to Section 2254(d)(2)'s requirement that a petitioner show that the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the Supreme Court has explained that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance" and that federal habeas relief is precluded even where the state court's factual determination is debatable. *Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). Under this standard, "it is not enough to show that a state court's decision was incorrect or erroneous. Rather, a petitioner must show that the decision was objectively unreasonable, a substantially higher threshold requiring the petitioner to show that a reasonable factfinder must conclude that the state court's determination of the facts was unreasonable." *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) (brackets and internal quotation marks omitted).

The Court must presume that a state court's factual determinations are correct and can find those factual findings unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001).

This presumption applies not only to explicit findings of fact but also "to

those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Ford v. Davis*, 910 F.3d 232, 235 (5th Cir. 2018) (Section 2254(e)(1) "'deference extends not only to express findings of fact, but to the implicit findings of the state court.' As long as there is 'some indication of the legal basis for the state court's denial of relief,' the district court may infer the state court's factual findings even if they were not expressly made." (footnotes omitted)).

And, even if the state court errs in its factual findings, mere error is not enough – the state court's decision must be "*based* on [an] unreasonable factual determination." *Will v. Lumpkin*, 978 F.3d 933, 942 (5th Cir. 2020) (emphasis in original). In other words, habeas relief is unwarranted if the state court's conclusion would not have changed even if it got the disputed factual determination right. *See id.*

Further, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Richter*, 562 U.S. at 98; *see also Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003) ("a federal habeas court is authorized by Section 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (per curiam))); *Evans*, 875 F.3d at 216 n.4 (even where "[t]he state habeas court's analysis [is] far from thorough," a federal court "may not review [that] decision de novo simply because [it finds the state court's]

written opinion 'unsatisfactory'" (quoting *Neal*, 286 F.3d at 246)). This is "[b]ecause a federal habeas court only reviews the reasonableness of the state court's ultimate decision," "not the written opinion explaining that decision." *Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003) (quoting *Neal*, 286 F.3d at 246).

Section 2254 thus creates a "highly deferential standard for evaluating state court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). To overcome this standard, a petitioner must show that "there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98.

That is, a petitioner must, in sum, "show, based on the state-court record alone, that any argument or theory the state habeas court could have relied on to deny [him] relief would have either been contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court." *Evans*, 875 F.3d at 217.

## A. Trial Court Error (Claims 1-2)

In claims one and two, Perala claims that the trial court violated his constitutional right to due process by excluding evidence – specifically, portions of the video recording of the complaining witness's (the CW) forensic interview that allegedly contradicted some of her testimony at trial and evidence of an unopened condom in the CW's backpack found after her outcry, which Peralta argued showed that she was sexually active with someone other than him and could explain abnormal findings of penetration in her sexual abuse examination.

Federal courts "do not sit as a super state supreme court to review error under state law." *Bailey v. Procunier*, 744 F.2d 1166, 1168 (5th Cir. 1984). The Due Process clause "does not afford relief where the challenged evidence was not the principal focus at trial and the errors were not so pronounced and persistent that it permeates the entire atmosphere of the trial." *Gonzales v. Thaler*, 643 F.3d 425, 431 (5th Cir. 2011) (cleaned up). "[A] state defendant has no constitutional right to an errorless trial." *Banks v. McGougan*, 717 F.2d 186, 190 (5th Cir. 1983). A petitioner is not entitled to relief unless "[a]n erroneous state court evidentiary ruling…violates a specific federal constitutional right or is so egregious it renders the petitioner's trial fundamentally unfair." *Garza v. Thaler*, 909 F. Supp. 2d 578, 660 (W.D. Tex. 2012) (citing *Payne v. Tennessee*, 501 U.S. 808, 825 (1991)); further citations omitted). "A trial is fundamentally unfair if 'there is a reasonable probability that the verdict might have been different had the trial been properly conducted.'" *Foy v. Donnelly*, 959 F.2d 1307, 1317 (5th Cir. 1992) (internal quotation marks omitted); *see also Little v. Johnson*, 162 F.3d 855, 861 n. 7 (5th Cir. 1998).

### i.    *Extrinsic Evidence of Prior Inconsistent Statements*

Looking first at the extrinsic evidence of prior inconsistent statements, Peralta contends that the CW testified at trial that he picked her up from middle school and had sex with her and that this was the first time he sexually abused her, yet the CW told a forensic interviewer in a video-recorded interview that the sexual abuse predated that incident. *See* Dkt. No. 11-11 at 244-45. Also, according to Peralta, the CW testified at trial that there was only one incident of sexual abuse in

middle school, but she told the forensic interviewer that there were other instances in middle school. *See* Dkt. No. 11-11 at 251-52.

The trial court ruled that Peralta's counsel did not establish the proper foundation under Texas Rule of Evidence 613 to admit extrinsic evidence of the prior inconsistent statements. *See* Dkt. No. 11-13 at 6.

Initially, Peralta fails to establish that the trial court erred, undermining the premise of his due process claim. Regarding the first inconsistent statement, the CW admitted making the inconsistent statement. *See* Dkt. No. 11-11 at 245. When a witness unequivocally admits to a prior inconsistent statement, he or she may not be impeached with extrinsic evidence of it. *See, e.g.*, *McGary v. State*, 750 S.W.2d 782, 786 (Tex. Crim. App. 1988). So, the trial court did not err in excluding extrinsic evidence of that statement.

Regarding the second inconsistent statement, Peralta's counsel never presented the CW with the contents of the prior statement – a prerequisite to admissibility of extrinsic evidence under Rule 613 – but, rather, he only asked if she had ever told anyone anything different than what she testified to at trial:

> Q.    Have you ever, uh, told anyone, uh, something different than what you told us today that [Peralta] only picked you up and had sex with once in middle school?
>
> A.    I don't remember.

Dkt. No. 11-11 at 252.

But, even assuming that the trial court did err, the state habeas court could have reasonably concluded that such was error was not of a constitutional

magnitude. Peralta must show that "an erroneous state court evidentiary ruling …
violates a specific federal constitutional right or is so egregious it renders the
petitioner's trial fundamentally unfair." *Garza*, 909 F. Supp. 2d at 660.

Peralta cannot show a reasonable probability that the verdict might have
been different had the trial court allowed the extrinsic evidence, which is necessary
to show fundamental unfairness. *See Foy*, 959 F.2d at 1317. The jury was already
aware of one of the inconsistencies even without extrinsic evidence because, as
explained above, the CW admitted making the statement to the forensic
interviewer. Dkt. No. 11-11 at 245. As for the second inconsistent statement, the
CW never denied making it; she only testified that she did not remember. That
extrinsic evidence of a statement that the CW never denied making would have
convinced the jury to disregard her testimony against Peralta is speculative.

And, at any rate, additional emphasis of the statements through extrinsic
evidence might been more harmful than helpful because the CW accused Peralta of
more instances of sexual assault in the interview than she attributed to him at trial.

Nor is there any clearly established federal law holding that the exclusion of
the extrinsic evidence violated a specific constitutional right. *See Garza*, 909 F.
Supp. 2d at 660.

Peralta claims that excluding the forensic interview video violated his right
to present a complete defense. Dkt. No. 27 at 22. The Supreme Court has held that
the "Constitution guarantees criminal defendants 'a meaningful opportunity to
present a complete defense.'" *Nevada v. Jackson*, 569 U.S. 505, 509 (2013) (per

curiam) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)). "But it has also recognized that 'state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials.'" *Lucio v. Lumpkin*, 987 F. 3d 451, 467 (5th Cir. 2021) (plurality opinion) (quoting *Jackson*, 569 U.S. at 509; further citation omitted).

"Only rarely has the [the United States Supreme Court] held that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence." *Jackson*, 569 U.S. at 509 (citing *Holmes v. South Carolina*, 547 U.S. 319, 324, 331 (2006) (rule did not rationally serve any discernible purpose); *Rock v. Arkansas*, 483 U.S. 44, 61 (1987) (rule arbitrary); *Chambers v. Mississippi*, 410 U.S. 284, 302-303 (1973) (state did not even attempt to explain the reason for its rule); *Washington v. Texas*, 388 U.S. 14, 22 (1967) (rule could not be rationally defended).

In *Lucio v. Lumpkin*, a plurality of the Fifth Circuit noted that cases involving *Crane* and the right-to-present-a-complete-defense principle "'typically focus' on evidentiary rules that lead to 'categorical prohibitions of certain evidence and not discretionary decision to exclude evidence under general and otherwise uncontroversial rules.'" 987 F.3d at 470-71 (concluding that it was not clearly established that the right to present a defense applied to trial court rulings that expert was unqualified to testify and that expert testimony was irrelevant) (citing *Caldwell v. Davis*, 757 F. App'x 336, 339 (5th Cir. 2018)).

Here, Peralta does not challenge the constitutionality of Rule 613 or the requirement that one lay a proper foundation to impeach by prior inconsistent statements; he simply contests the trial court's conclusion that he did not do that. Nor does Peralta show that he was categorically prevented from testing the CW's credibility through cross-examination. He was able to question the CW about what she told the forensic interviewer.

Because Peralta does not challenge a "categorical prohibition of certain evidence," and instead challenges a discretionary decision to exclude evidence, it is not clearly established under Supreme Court precedent that the right to present a complete defense is implicated, and the CCA's rejection of this theory of due process relief was not unreasonable. *See Lucio*, 987 F.3d at 470-71; *see also Grant v. Royal*, 886 F.3d 874, 959-60 (10th Cir. 2018) (rejecting state prisoner's habeas application because *Crane* did not implicate the "discretionary application of evidentiary rules").

Peralta also claims that the trial court's ruling on this issue violated his rights under the Confrontation Clause. Peralta appears to claim that the Confrontation Clause includes a right to present extrinsic evidence of inconsistent statements.

Under AEDPA, Peralta must point to clearly established Supreme Court precedent to support this argument. Peralta relies primarily on *Davis v. Alaska*, 415 U.S. 308 (1974), *Delaware v. Van Ardsall*, 475 U.S. 673 (1986), and *Olden v. Kentucky*, 488 U.S. 227 (1988) (per curimam).

- 13 -

But, although each of these cases recognize the general principle that a defendant has a right to cross-examine a complainant or other accusing witness, none discuss the admission of extrinsic impeachment evidence. *See Drivers v. Landers*, 444 F. App'x 934, 935 (9th Cir. 2011) (addressing and dismissing similar claim). The Supreme Court has never held that the Confrontation Clause requires, in addition to cross-examination, the admission of extrinsic evidence to show inconsistencies in the complaining witness's story, and, therefore, Peralta is not entitled to federal habeas relief on this issue. *See id.* at 936 ("The Supreme Court has never held that the Confrontation Clause requires, in addition to cross-examination, the admission of extrinsic evidence for the purpose of establishing a witness's motive to lie. The absence of any clearly established federal law vitiates a habeas claim under the AEDPA."); citation omitted); *see also Dansby v. Payne*, 47 F.4th 647, 656 (8th Cir. 2022) ("Indeed, the Supreme Court 'has never held that the Confrontation Clause entitles a criminal defendant to introduce extrinsic evidence for impeachment purposes.'") (citing *Jackson*, 569 U.S. at 512).

In short, Peralta fails to demonstrate that the CCA's rejection of his due process claim concerning exclusion of extrinsic evidence of prior inconsistent statements was "contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1).

### ii.    *Condom Evidence*

In his second claim for relief, Peralta claims that the trial court violated his due process right by not allowing him to elicit testimony from the CW's mother – a

codefendant and Peralta's fiancée – that, about two weeks after the CW's outcry, she found an unopened condom in the CW's backpack and that she and Peralta did not use condoms. At trial, Peralta's counsel argued this condom showed that the CW was having sex with someone other than Peralta and would have explained an abnormal sexual assault examination showing that the CW had loss of hymen tissue consistent with acts of penetration. *See* Dkt. No. 27 at 31.

The trial court found this evidence inadmissible under Texas Rule of Evidence 412, which provides for evidence of specific instances of sexual behavior in aggravated sexual assault cases when "necessary to rebut or explain scientific or medical evidence offered by the prosecutor" or when "constitutionally required to be admitted," provided that the probative value of the evidence outweighs the danger of unfair prejudice. *See* TEX. R. EVID. 412; Dkt. No. 11-12 at 162 (trial court ruling).

The trial court's ruling was not error under state law. As the state appellate court found on direct appeal, the condom evidence – to the extent offered to explain the irregular examination findings implicating Peralta – did not rebut or explain those findings because (1) it was speculative that one could infer sexual activity from the presence of the condom, and (2) even if one could plausibly make that inference, this would not necessarily exonerate Peralta. Dkt. No. 11-22 at 14-15.

But, even assuming that the trial court erred, to obtain federal habeas relief, Peralta must show both that this ruling ran afoul of a specific constitutional right or rendered his trial fundamentally unfair and that the state habeas court was

unreasonable in concluding otherwise. *See Garza*, 909 F. Supp. 2d at 660 (citation omitted).

The ruling did not violate a specific constitutional right under clearly established federal law.

Again, Peralta relies on the constitutional right to present a complete defense. But he does not challenge the constitutionality of Rule 412 wholesale. He challenges only the trial court's discretionary ruling that the condom evidence was inadmissible under that rule. And, so, the right to present a complete defense under *Crane* and its progeny is not implicated, or, at the least, there is no clearly established Supreme Court jurisprudence saying that it is, so the CCA's rejection of relief on this theory was not contrary to clearly established federal law or an unreasonable application of it. *See Lucio*, 987 F.3d at 470-71.

Neither has Peralta shown that exclusion of the evidence rendered his trial fundamentally unfair. As explained above, any probative value of the condom evidence was limited and attenuated. It was not "crucial, critical, and highly significant" evidence. *Porretto v. Stalder*, 834 F.2d 461, 465 (5th Cir. 1987). ("Erroneous exclusion of evidence is fundamentally unfair if the evidence was material in the sense that it was crucial, critical, and highly significant.").

In sum, the CCA's denial of this claim was not unreasonable, and Peralta is not entitled to federal habeas relief in relation to it.

**B. Prosecutorial Misconduct – Use of Perjured Testimony (Claim 3)**

In claim 3, Peralta contends that his right to due process was violated when State attorneys introduced false testimony and then failed to correct it. *See* Dkt. No. 4 at 10. The only specific testimony that he references is the CW's testimony that Ms. Jones was the outcry witness – not Ms. Velazco, who, according to Peralta, was the "true outcry witness" and who was skeptical of the CW's claims. Dkt. No. 27 at 38.

Prosecutorial misconduct may "so infec[t] the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). To demonstrate a due process violation, a petitioner must prove (1) the testimony in question was actually false, (2) the prosecutor was aware of the perjury, and (3) the testimony was material. *See Faulder v. Johnson*, 81 F.3d 515, 519 (5th Cir. 1996).

The following direct examination testimony is at issue:

> Q.    So let's talk about your outcry. So on March 5th you went to school and you made an outcry of sexual abuse by your stepdad; is that correct?
>
> A.    Yes, ma'am.
>
> Q.    Okay. Um, who did you tell first?
>
> A.    I told Ms. Jones.
>
> Q.    You told Ms. Jones. Did you talk to Ms. Velazco as well?
>
> A.    Yes, ma'am.
>
> Q.    Okay. Did you talk to both of them that same day?

A.    Yes. Ma'am.

Dkt. No. 11-11 at 216.

Peralta has failed to establish how this was misconduct. If anything, the State attorney attempted to correct the CW's testimony. The State did not attempt to obfuscate Ms. Velazco's involvement.

At bottom, the CCA's rejection of this claim was not unreasonable, and Peralta is not entitled to federal habeas relief in relation to it.

## C. Judicial Bias (Claim 4)

Peralta claims that the trial judge was biased against him. In support he claims that: (1) Peralta is Hispanic "and the trial judge made a comment that she only speaks English and was having trouble getting its point across to [Peralta]"; (2) the trial judge remarked that she could "smell marijuana" every time Peralta's witnesses and family members returned from break; (3) the trial judge "made over 25 remarks about [Peralta], accusing him of such things as chewing gum and having his cell phone on during trial"; (4) the trial judge "harassed, confused, and intimidated" the outcry witness, Ms. Velazco; (5) the trial judge made adverse evidentiary rulings against Peralta; (6) the trial judge issued multiple *Allen* charges to the jury; (7) the trial judge refused to send the forensic video and police report to the jury when they requested them during deliberations; (8) the trial judge admonished Peralta during his testimony not to yell at the State attorney "when in fact it was the district attorney who was badgering [Peralta]"; and (9) the trial judge

allowed the State to elicit and use false testimony. Dkt. No. 4 at 14; Dkt. No. 27 at 28.

"Defendants in the American judicial system have the right to a fair trial, and part of this right is fulfilled by a judicial officer who impartially presides over the trial." *Buntion v. Quarterman*, 524 F.3d 664, 672 (5th Cir. 2008) (citing *Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997)). But "most questions concerning a judge's qualifications to hear a case are not constitutional ones, because the Due Process Clause of the Fourteenth Amendment establishes a constitutional floor, not a uniform standard." *Bracy*, 520 U.S. at 904. "A judge will, however, violate a defendant's due process rights if he is biased against the defendant or has interest in the outcome of the case." *Buntion*, 524 F.3d at 672 (citing *Bracy*, 520 U.S. at 905). "A likelihood or appearance of bias can disqualify a judge as well." *Id.* (citing *Taylor v. Hayes*, 418 U.S. 488, 501 (1974)). "A criminal defendant tried by a partial judge is entitled to have his conviction set aside, no matter how strong the evidence against him." *Edwards v. Balisok*, 520 U.S. 641, 647 (1997) (citations omitted).

"Bias is a difficult claim to sustain under AEDPA because the Supreme Court's case law on bias has acknowledged that what degree or kind of interest is sufficient to disqualify a judge from sitting cannot be defined with precision." *Buntion*, 524 F.3d at 672 (cleaned up).

Opinions formed based on the facts at trial are rarely a basis for recusal unless they show a deep-seated, extreme favoritism or antagonism. *Liteky v. United States*, 510 U.S. 540, 555 (1994). "Judges do not have to be naïve; the evidence at

trial may reveal the defendant to be a 'thoroughly reprehensible person.'" *Buntion*, 524 F.3d at 673. (citing *Liteky*, 510 U.S. at 550-51). Further, "expressions of impatience, dissatisfaction, annoyance, and even anger" do not rise to the level of judicial bias. *Liteky*, 510 U.S. at 555-56. "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Id.* (citing *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966)).

Turning to the analysis, Peralta has failed to show judicial bias – or, at the least, the CCA could have reasonably come to that conclusion. Starting with the comment that the trial judge only speaks English, Peralta fails to provide the context for this statement. During a pre-trial hearing, it was revealed that Peralta violated the terms of his bond by going to the house where the co-defendant was staying. The trial judge again explained that Peralta should not do that, stating, "[d]o not go to that house. I don't know – I only speak English. That's all I've got." Dkt. No. 11-9 at 40.

This comment was, at most, an expression of frustration and impatience with the defendant's failure to follow judicial orders. Expressions of impatience like this do not evince judicial bias. *See Liteky*, 510 U.S. at 555-56.

Next, the trial judge remarked on multiple occasions that she could smell marijuana on audience members and advised that they not come into the courtroom smelling like marijuana. *See*, *e.g.*, Dkt. No. 11-14 at 22; Dkt. No. 11-15 at 7. But a trial judge has authority to maintain decorum in his or her courtroom, and doing so does not evince judicial bias. *See*, *e.g.*, *Liteky*, 510 U.S. at 556 ("A judge's ordinary

efforts at courtroom administration – even a stern and short-tempered judge's ordinary efforts at courtroom administration – remain immune"); *United States v. Laureano-Perez*, 797 F.3d 45, 72 (1st Cir. 2015) (warning defendant not to stare at the jury and prohibiting him from raising his hand in the middle of Government questioning "are simply efforts at courtroom administration which are well within the district court's discretion" and which do not evince bias) (citing *Liteky*, 510 U.S. at 556); *Mitchell v. Kirk*, 20 F.3d 936, 937 (8th Cir. 1994) ("Because it is clear the judge was admonishing Mitchell and making the remarks to maintain control over the judicial proceedings and to preserve courtroom decorum, we reject Mitchell's judicial bias contention.").

Next, as for the "over 25 remarks" chastising Peralta and his family "in front of the jury" for such things as chewing gum and talking on cell phones, all the instances of the trial judge admonishing about the use of cell phones appear to have been efforts at courtroom administration that are ordinarily insufficient to evince judicial bias. *See, e.g., Laureano-Perez*, 797 F.3d at 72; *see, e.g.*, Dkt. No. 11-13 at 133-34, 227, 300; Dkt. No. 11-14 at 20; Dkt. No. 11-15 at 7.

The undersigned did not locate any admonishments related to gum-chewing, but any gum-chewing admonishments would also be routine efforts at courtroom administration and not indicative of bias.

Next, Peralta claims that the trial judge "harassed, confused, and intimidated" Ms. Velazco – a defense witness to whom the CW offered an outcry. The record does not show that, however. *See* Dkt. No. 11-12 at 80-102 (proffered

testimony from Ms. Velazco and argument regarding whether she could testify). Outside the presence of the jury, the trial judge expressed her concerns about the credibility of Ms. Velazco. But the trial judge allowed her to testify, noting "[I]'ll let the jury decide. I don't find her to be credible, but I'm not the trier of fact in this matter." *Id.* at 102.

"[J]udicial remarks that are critical or disproving of, or even hostile to, counsel for the parties or their cases, ordinarily do not support a bias or partiality challenge." *Liteky*, 510 U.S. at 555; *see also Garcia v. Woman's Hosp. of Texas*, 143 F.3d 227, 230 (5th Cir. 1998) (affirming denial of motion to recuse where district judge made unflattering comments about the plaintiff's ability to prove her case). Accordingly, the trial judge's comments expressing skepticism – outside of the presence of the jury – of Ms. Velazco's credibility do not evince judicial bias.

Next, regarding the adverse evidentiary rulings against Peralta and the rulings during jury deliberations concerning appropriate responses to the jury's questions, "adverse rulings, without more, do not warrant disqualification for bias." *Mandawala v. Northeast Baptist Hospital, Counts 1, 2, and 11*, 16 F.4th 1144, 1156 (5th Cir. 2021); *Liteky*, 510 U.S. at 555.

Next, regarding an admonishment to Peralta to not "yell" at the State attorney, the record shows that the trial judge – following a heated exchange between Peralta and the State attorney, and after excusing the jury – cautioned both Peralta and the State attorney to "check themselves." Dkt. No. 11-13 at 300.

She instructed Peralta not to ask questions and to push the microphone back because he got "kind of loud." Dkt. No. 11-13 at 300-301.

The undersigned cannot say that this incident evinces bias when the trial judge told both Peralta and the State attorney to check their behavior. And, as explained, attempts to manage the courtroom are generally not indicative of bias.

Finally, Peralta claims that the trial judge allowed the State to elicit and use false testimony, but, as explained above, there was no prosecutorial misconduct and therefore nothing for the trial judge to correct.

In sum, Peralta fails to show the trial judge was biased against him. At the least, it cannot be shown under AEDPA's relitigation bar that the CCA's rejection of this claim was objectively unreasonable. *See Buntion*, 524 F.3d at 674-75.

### D. Ineffective Assistance of Counsel (Claims 5a-u)

Peralta claims that his trial counsel was ineffective in various ways.

The Court reviews the merits of properly exhausted IAC claims, whether directed at trial or appellate counsel, under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984), under which a petitioner "'must show that counsel's performance'" – "'strongly presume[d to be] good enough'" – "'was [1] objectively unreasonable and [2] prejudiced him.'" *Coleman v. Vannoy*, 963 F.3d 429, 432 (5th Cir. 2020) (quoting *Howard v. Davis*, 959 F.3d 168, 171 (5th Cir. 2020)).

To count as objectively unreasonable, counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth

Amendment." *Strickland*, 466 U.S. at 687; *see also Buck v. Davis*, 137 S. Ct. 759, 775 (2017) (reaffirming that "[i]t is only when the lawyer's errors were 'so serious that counsel was not functioning as the "counsel" guaranteed ... by the Sixth Amendment' that *Strickland*'s first prong is satisfied" (citation omitted)). "And to establish prejudice, a defendant must show 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Andrus v. Texas*, 140 S. Ct. 1875, 1881 (2020) (per curiam) (quoting *Strickland*, 466 U.S. at 694).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003); *see also Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) ("[B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" (quoting *Strickland*, 466 U.S. at 689)).

And, "[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Richter*, 562 U.S. at 110. "The Supreme Court has admonished

courts reviewing a state court's denial of habeas relief under AEDPA that they are required not simply to give [the] attorney's the benefit of the doubt, ... but to affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." *Clark v. Thaler*, 673 F.3d 410, 421 (5th Cir. 2012) (internal quotation marks omitted).

Therefore, on habeas review under AEDPA, "if there is any 'reasonable argument that counsel satisfied *Strickland*'s deferential standard,' the state court's denial must be upheld." *Rhoades v. Davis*, 852 F.3d 422, 432 (5th Cir. 2017) (quoting *Richter*, 562 U.S. at 105); *see also Sanchez*, 936 F.3d at 305 ("As the State rightly puts it, we defer 'both to trial counsel's reasoned performance and then again to the state habeas court's assessment of that performance.'" (quoting *Rhoades*, 852 F.3d at 434)); *Dunn v. Reeves*, 141 S. Ct. 2405, 2410-11 (2021) (per curiam) (noting that a federal court can may grant habeas relief only if *every* " 'fairminded juris[t]'" would agree that *every* reasonable lawyer would have made a different decision" (citing *Richter*, 562 U.S. at 101) (emphasis in original).

To demonstrate prejudice, a habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Richter*, 562 U.S. at 111. "Instead,

*Strickland* asks whether it is 'reasonably likely' the result would have been different," which "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case." *Id.* at 111-12 (quoting *Strickland*, 466 U.S. at 693, 696, 697). "The likelihood of a different result must be substantial, not just conceivable." *Id.* at 112.

IAC claims are considered mixed questions of law and fact and are therefore analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010); *Adekeye*, 938 F.3d at 682.

Where the state court has adjudicated claims of ineffective assistance on the merits, this Court must review a habeas petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *Cullen v. Pinholster*, 563 U.S. 170, 190, 202 (2011); *compare Rhoades*, 852 F.3d at 434 ("Our federal habeas review of a state court's denial of an ineffective-assistance-of-counsel claim is 'doubly deferential' because we take a highly deferential look at counsel's performance through the deferential lens of § 2254(d)." (citation omitted)), *with Johnson v. Sec'y, DOC*, 643 F.3d 907, 910-11 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.").

In such cases, the "pivotal question" for this Court is not "whether defense counsel's performance fell below *Strickland*'s standard"; it is "whether the state

court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101; *see also id.* at 105 ("Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." (internal quotation marks and citations omitted)). In other words, AEDPA does not permit a *de novo* review of state counsel's conduct in these claims under *Strickland*. *See id.* at 101-02. Instead, on federal habeas review of a *Strickland* claim fully adjudicated in state court, the state court's determination is granted "a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* at 101.[1]

---

[1] *See also Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (per curiam) (explaining that federal habeas review of ineffective-assistance-of-counsel claims is "doubly deferential" "because counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment'"; therefore, "federal courts are to afford 'both the state court and the defense attorney the benefit of the doubt'" (quoting *Burt*, 571 U.S. at 22, 15)); *Adekeye*, 938 F.3d at 683-84 ("The Supreme Court standard on prejudice is sharply defined: 'It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.' [A petitioner] must show it was 'reasonably likely' the jury would have reached a different result, not merely that it could have reached a different result. The Court reaffirmed this point in *Richter*: 'The likelihood of a different result must be substantial, not just conceivable.' Now layer on top of that the habeas lens of reasonableness. [Where] the state court has already adjudicated [a petitioner's] ineffective-assistance claim on the merits, he must show that the court's no-prejudice decision is 'not only incorrect but "objectively unreasonable."' Put differently, [he] must show that every reasonable jurist would conclude that it is reasonable likely that [a petitioner] would have fared better at trial had his counsel conducted [himself differently]. 'It bears repeating,' the Supreme Court emphasized in *Richter*, 'that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.'" (footnotes omitted)).

### i.    Failure to Investigate, Obtain Reports and Records, Make Copy of Video, and Retain an Expert (Claims 5(a)-5(h))

Turning to the analysis, in claim 5(a), Peralta faults his trial counsel for failure to "engage in a reasonable amount of pretrial investigation" that would have allowed him to introduce the forensic interview video into evidence. Dkt. No. 4 at 16.

The CCA did not unreasonably apply *Strickland* in denying Peralta's general failure to engage in pretrial investigation claim because he does not explain what further investigation would have revealed or how that information would have been pertinent to the admissibility of the forensic interview. *Nelson v. Hargett*, 989 F.2d 847, 850 (5th Cir. 1993).

In claim 5(b), Peralta claims that his counsel was ineffective for failing to obtain the report of the CW's sexual assault examination. *See* Dkt. No. 4 at 16. But Peralta's counsel did get this report in discovery. *See* Dkt. No. 11-11 at 112. To the extent that Peralta is claiming that his counsel should have gotten it sooner or reviewed it in more detail, he fails to explain how he was prejudiced by his trial counsel's actions, and the CCA did not unreasonably apply *Strickland* in denying this claim.

In claim 5(c), Peralta claims that his counsel was ineffective for failing to obtain records showing that the CW was in a special education class. *See* Dkt. No. 4 at 16. But Peralta does not explain how he was prejudiced by this. The CW testified that she was, at one point, in special education classes, so the jury was already

aware of that. *See* Dkt. No. 11-11 at 148-149. The CCA did not unreasonably apply *Strickland* in denying this claim.

In claim 5(d), Peralta claims that his counsel should have gotten an expert to counter the State's child abuse expert. *See* Dkt. No. 4 at 16. Claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and allegations of what a witness would have stated are largely speculative. *See Bray v. Quarterman*, 265 F. App'x 296, 298 (5th Cir. 2008)). To show prejudice, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense. *See id*. (citing *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985)). This standard applies to lay and expert witnesses. *See Evans v. Cockrell*, 285 F.3d 370, 377-78 (5th Cir. 2002).

Peralta fails to provide any of that information and therefore the CCA did not unreasonably apply *Strickland* in denying this claim.

In claim 5(e), Peralta faults his counsel for not making a copy of the forensic interview video. *See* Dkt. No. 4 at 16. But Peralta does not explain how he was prejudiced. His trial counsel had reviewed the forensic interview, was familiar with its contents, and sought to impeach the CW with it. *See* Dkt. No. 11-12 at 199. Peralta fails to show that the CCA unreasonably applied *Strickland* in denying this claim.

In claim 5(f), Peralta claims his counsel was ineffective for failing to obtain records of the CW's sexual history. But he fails to allege that such a record – aside from the sexual assault examination results discussed above – existed or what it would have shown. Peralta fails to show that the CCA unreasonably applied *Strickland* in rejecting this claim, and he is not entitled to federal habeas relief in relation to it.

In claim 5(g), Peralta claims that his counsel was ineffective for not obtaining "school records of the sign out logs to prove [Peralta] did not take the CW out of school cause [sic] he wanted to; the dates would prove the state lied." Dkt. No. 4 at 16. But this claim is too conclusory to support federal habeas relief. Peralta does not explain how the sign out logs were exculpatory. Peralta fails to show that the CCA unreasonably applied *Strickland* in rejecting this claim, and he is not entitled to federal habeas relief in relation to it. *See Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) ("This Court has made clear that conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in federal habeas proceeding."); citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

In claim 5(h), Peralta faults his counsel for not getting three reports from the CW's therapy sessions. *See* Dkt. No. 4 at 16. But Peralta fails to explain the significance of these reports or how he was prejudiced by his counsel's failure to obtain them. Peralta fails to show that the CCA unreasonably applied *Strickland* in rejecting this claim, and he is not entitled to federal habeas relief in relation to it.

### ii. Failure to Call and Question Lay Witnesses and Object to Prosecutorial Misconduct (Claims 5(i)-5(o))

In claim 5(i), Peralta claims that his counsel should have questioned the forensic interviewer regarding her interview of the CW. *See* Dkt. No. 4 at 16. But Peralta fails to allege what such questioning would have unveiled that was helpful to his case or explain how he was prejudiced. Peralta fails to show that the CCA unreasonably applied *Strickland* in rejecting this claim, and he is not entitled to federal habeas relief in relation to it.

In claims 5(j)-(n), Peralta claims that his counsel was ineffective for not calling the co-defendant's mother, Pamela Hicks, Elissa Figueroa, Elisa Cantu, and Bobby Estes as witnesses. *See* Dkt. No. 4 at 16.

As to the co-defendant's mother, Pamela Hicks, Elisa Cantu, and Bobby Estes, there are no affidavits or other evidence from these witnesses in the record demonstrating that they were available to testify, would have done so, or the contents of their proposed testimony. *See* Dkts. No. 4, 8, 27. The absence of this evidence defeats IAC claims related to the failure to call these witnesses. *See*, *e.g*, *Combs v. United States*, Nos. 3:08-CV-0032 and 3:03-CR-0188, 2009 WL 2151844, at *10 (N.D. Tex. July 10, 2009) ("Unless the movant provides the court with affidavits, or similar matter, from the alleged favorable witnesses suggesting what they would have testified to, claims of ineffective assistance of counsel fail for lack of prejudice."); *see also Sayre v. Anderson*, 238 F.3d 631, 636 (5th Cir. 2001).

Peralta argues that his own verified pleadings should be enough to demonstrate the witnesses would have been available to testify and how they would

have testified. *See* Dkt. No. 27 at 44. But the undersigned cannot agree; Peralta must provide other evidence beyond his own conclusory assertions. *See*, *e.g.*, *Robinson v. Smith*, No. 3:19-cv-2593-C-BH, 2022 WL 17970411, at *6 (N.D. Tex. Nov. 28, 2022) ("Aside from his own conclusory assertions, which are insufficient to entitle him to § 2254 relief, Petitioner has failed to provide any facts or evidence demonstrating that the uncalled witnesses were available to testify and would have testified, the content of their proposed testimony, and any such testimony would have been favorable to a particular defense."), *rec. accepted* 2022 WL 17961396 (N.D. Tex. Dec. 27, 2022).

And, at any rate, Peralta's petition – the only verified pleading – does not say that the witnesses were available to testify or how they would have testified. *See* Dkt. No. 4 at 16.

Peralta asks the Court to ignore Fifth Circuit precedent requiring a showing of availability to testify and that the witness would have done so, contending that defense counsel can usually compel testimony through a subpoena. *See* Dkt. No. 27 at 44.

But this Court cannot ignore (much less overrule) Circuit precedent, even if Peralta thinks it is incorrect. *See*, *e.g.*, *Perez v. Abbott*, 250 F.Supp.3d 123, 139 (W.D. Tex. 2017) ("[A] district court is bound by a circuit decision unless or until it is overturned by an en banc decision of the circuit court or a decision of the Supreme Court.").

With all of that said, Peralta did provide a statement (although not notarized or made under penalty of perjury) from his mother, Elissa Figueroa, to the CCA in the state habeas proceedings. *See* Dkt. No. 8 at 22-23. In it, Figueroa states that she was "sworn in and ready" to testify as a character witness for Peralta.

But, even if this statement was sufficient under Fifth Circuit precedent, Peralta still must show that the failure to call the witness was not a part of a reasonable strategy. *See Hinkle v. Dretke*, 486 F. App'x 687, 688 (5th Cir. 2004). And he offers no argument on that issue. The Fifth Circuit has noted that "[c]ounsel's failure to call character witnesses does not mandate a finding of ineffective assistance of counsel." *U.S. v. Cockrell*, 720 F.2d 1423, 1428 (5th Cir. 1983).

At bottom, the CCA did not unreasonably apply *Strickland* in denying Peralta's failure-to-call-lay-witness IAC claims.

In claim 5(o), Peralta claims that his counsel should have "tak[en] the … prosecutors to task" regarding the CW's alleged perjury. Dkt. No. 4 at 16. But, as discussed earlier, Peralta has not established any prosecutorial misconduct or perjury. An objection from counsel would have been meritless, and counsel is not required to make futile objections. *See Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990). This IAC claim is meritless, and the CCA did not unreasonably apply *Strickland* in rejecting it.

### iii. *Failure to Object During Jury Deliberations and Failure to Move to Sequester the Jury (Claims 5(p)-(t)*

In claims 5(p)-(t), Peralta claims that his counsel should have objected to the trial courts' *Allen* charges, moved to sequester the jury, objected to the trial court's

refusal to answer juror questions, and objected to the trial court's violations of Texas Rules of Court. *See* Dkt. No. 4 at 16-17.

While deliberating, the jury sent notes asking for "guidance on possible date conflict for F18-75331 … 10/36/16 [sic] versus 10/27/17," and for "police reports for all charges." Dkt No. 11-13 at 406-407, 409, 410. Each time, the trial court responded: "Members of the jury, the Court under the law is not permitted to answer the questions that you have presented. Please refer to and follow the charge of the Court." *Id.*

Peralta claims that the trial court's responses violate Texas Rules of Criminal Procedure 36.27 and 36.28 and Texas Rules of Court 285-287, which generally allow the jury to communicate with the court, to submit written communications to the court that the court shall respond to in writing, and to apply to the court to have a trial witness's testimony read to them from the court reporter's notes.

Assuming that the trial court's responses did not comply with any of these rules, Peralta fails to persuasively explain how he was prejudiced. He argues that the jury was "at an impasse regarding the complainant's veracity and was attempting to reconcile her diverging claims presented at trial and in prior sources," and had the jury had these sources, it would have likely deadlocked, resulting in a mistrial. Dkt. No. 27 at 48.

But that argument is too speculative to show prejudice under *Strickland*. It is unclear how the "possible date conflicts" weighed on deliberations or how police

reports – which do not appear to have introduced into evidence – would have impacted deliberations.

Regarding the *Allen* charges, after ten hours of deliberation, the jury noted that it had not reached a unanimous verdict and asked for options going forward. *See* Dkt. No. 11-13 at 412. The trial court gave the following *Allen* charge before sending the jury home for the weekend:

> Members of the jury, if you can resolve the case by your verdict, you should do so. I don't mean to say that any individual juror should yield his or her conscience and positive conviction. But I do mean that when you are in the jury room, you should discuss this matter among yourselves carefully and listen to each other. Try, if you can, to reach a conclusion on the issue. It is your duty as jurors to keep your minds open to every reasonable argument.
>
> A juror should not have any pride of opinion, and should avoid hastily forming or expressing an opinion. A juror should not, however, surrender any conscientious views founded upon the evidence unless convinced by fellow jurors.
>
> I am satisfied that you have not deliberated sufficiently. In good conscience, at this moment, I cannot accept any report that you are unable to arrive at an agreement. Accordingly, I return you to your deliberations.

Dkt. No. 11-13 at 413.

The following Monday, the jury sent another note saying they had not reached a unanimous verdict. *See* Dkt. No. 11-14 at 5. The trial court gave the jury the same *Allen* charge and returned it to deliberations. *See id.* at 6-7. Later – it is unclear from the record how much later – the jury came back with verdicts against Peralta.

"A judge may encourage jurors who are having difficulty reaching a verdict to deliberate longer, and to give due consideration and respect to the views of their peers." *United States v. Straach*, 987 F.2d 232, 245 (5th Cir. 1993) (citing *Allen v. United States*, 164 U.S. 492 (1896)). In the habeas context, a "habeas petitioner must establish that the court's charge, under the totality of the circumstances, was so coercive as to have unconstitutionally rendered the petitioner's trial fundamentally unfair." *Montoya v. Scott*, 65 F.3d 405, 409 (5th Cir. 1995) (citation omitted). The Fifth Circuit has noted that "the most troublesome feature of the *Allen* charge" is the "exhortation to the minority to reexamine its views in light of the majority's arguments[.]" *United States v. Cheramie*, 520 F.2d 325, 330-31 (5th Cir. 1975).

Peralta has not established that his counsel could have raised a meritorious challenge to the *Allen* charges. The charges did not instruct the minority to reexamine its views in light of the majority's arguments, voice displeasure with the minority, or attempt to single out minority jurors. *See Cheramie*, 520 U.S. at 330-31. Also, the charge instructed the jurors not to "yield his or her conscience," which weighs against a finding of coerciveness. *See*, *e.g.*, *Thetford v. State*, No. 02-18-00488-CR, 2021 WL 278913, at *16 (Tex. App. – Fort Worth Jan. 28, 2021) (mem. op., not designated for publication), *rev'd in part on other grounds*, No. PD-0258-21, 2021 WL 2674484, at *1 (Tex. Crim. App. June 30, 2021) (collecting cases).

In sum, because the *Allen* charges were not unduly coercive, Peralta's counsel was not ineffective for failing to object to them. At the least, Peralta has failed to

show the CCA unreasonably applied *Strickland* in denying this claim, and he is not entitled to federal habeas relief in relation to it.

And, finally, regarding the failure to move to sequester the jury, Peralta does not explain how this prejudiced him.

This IAC claim is conclusory and meritless.

### iv.     *Failure to Seek Plea Bargain (Claim 5(u)*)

In claim 5(u), Peralta argues that his counsel should have sought a plea bargain. *See* Dkt. No. 4 at 17. The State did make plea offers of 60 years in relation to one count and 20 years each in relation to the other two counts, and Peralta rejected these offers. *See* Dkt. No. 11-4 at 5. To show prejudice from his counsel's alleged failure to obtain better offers, he would have to show that the State would have made more favorable offers and that he would have accepted them.

He fails to make that showing. There is simply no evidence that Peralta would have taken a plea agreement; the evidence is instead to the contrary. *See* Dkt. No. 11-4 at 5 (rejecting State plea offers). Peralta fails to show that the CCA unreasonably applied *Strickland* in rejecting this claim.

## E. Actual Innocence/No Evidence (Claim 6)

In his final claim, Peralta contends that there was "no evidence to legally indict" him. Dkt. No. 4 at 18.

The undersigned agrees with the State that this claim is procedurally defaulted.

Under Texas law, a petitioner can assert a "no evidence" claim on state habeas review, but not an insufficiency-of-the-evidence claim. *Ex parte Barfield*, 697 S.W.2d 420, 421 (Tex. Crim. App. 1985); *Ex parte Murschison*, 560 S.W.2d 654, 655 (Tex. Crim. App. 1978); *see also Ex parte Grigsby*, 137 S.W.3d 673, 674 (Tex. Crim. App. 2004); *Ex parte Easter*, 615 S.W.2d 719, 721 (Tex. Crim. App. 1981); *Ex parte Williams*, 703 S.W.2d 674, 677 (Tex. Crim. App. 1986); *Ex parte McLain*, 869 S.W.2d 349, 350 (Tex. Crim. App. 1988).

When an insufficiency-of-the-evidence claim is presented for the first time in state collateral review proceedings, and the CCA enters a denial without written order, "the applicant's sufficiency claim was denied because the claim is not cognizable." *Ex parte Grigsby*, 137 S.W.3d at 674.

And the CCA is not bound by the petitioner's description of the claim. Even if labeled a "no-evidence" claim – like Peralta's was in the state habeas proceedings here – unless the record is "totally devoid of evidentiary support," the claim will be construed as an insufficiency-of-the-evidence claim. *See Black v. Stephens*, 3:14-CV-341-L (BH), 2015 WL 9918692, at *6 (N.D. Tex. Oct. 27, 2015), *rec. accepted* 2016 WL 302261 N.D. Tex. Jan. 25, 2016) (citing *Ex parte Williams*, 703 S.W.2d at 678).

Here, Peralta raised his "no-evidence" claim for the first time in his state habeas application. But because there is evidence in the record supporting Peralta's conviction – such as the CW's testimony – the "no evidence" claim was construed as an insufficiency-of-the-evidence claim. And the CCA denied the claim without

written order because such a claim is not cognizable on collateral review. *See Ex parte Grigsby*, 137 S.W.3d at 674.

 Under the procedural default doctrine, a federal court may not consider a state prisoner's federal habeas claim when the last state court to consider the claim expressly and unambiguously based its denial of relief on an independent and adequate state procedural default. *See Johnson v. Puckett*, 176 F.3d 809, 823 (5th Cir. 1999).

In this case, the CCA clearly relied upon a firmly established and regularly followed state procedural law to deny Peralta's sufficiency-of-the-evidence claim, which represents an adequate state procedural bar to federal habeas review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-07 (1991); *West v. Johnson*, 92 F.3d 1385, 1398 n. 18 (5th Cir. 1996). Therefore, Peralta procedurally defaulted this claim.

Federal habeas review of procedurally defaulted claims is barred "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "The fundamental miscarriage of justice exception to the cause requirement of the procedural default doctrine is limited to cases in which the petitioner can show that 'a constitutional violation has probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense." *Hughes v. Quarterman*, 530 F.3d 336, 341-42 (5th Cir. 2008) (citations omitted).

Peralta attempts to invoke the miscarriage of justice exception, arguing that he is actually innocent. *See* Dkt. No. 27 at 54.

"To establish the requisite probability that he was actually innocent, the petitioner must support his allegation with new, reliable evidence that was not presented at trial and show that it was 'more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999) (quoting *Schlup v. Delo*, 513 U.S. 298 (1995)).

Peralta relies on the excluded forensic interview video as the new evidence. But, in *Fratta v. Davis*, 889 F.3d 225, 232 (5th Cir. 2018), the Fifth Circuit held that evidence that the petitioner knows of at trial and tries unsuccessfully to introduce into evidence is not "new evidence" sufficient to demonstrate actual innocence. Because Peralta knew of the evidence at trial and his counsel tried unsuccessfully to introduce it (*see* Dkt. No. 11-13 at 222-23), it is not the kind of new evidence that would support the actual innocence exception.

Peralta also argues that "*Martinez v. Ryan*, 566 U.S. 1 (2012), excuses any notion of default." Dkt. No. 27 at 55.

The undersigned disagrees. *Martinez* does not apply to claims outside of the IAC context, like Peralta's insufficiency-of-the-evidence claim. *See, e.g.*, *Granger v. Director, TDCJ-CID*, Civil Action No. 1:17-CV-291, 2023 WL 2224444, at *62 (E.D. Tex. Feb. 24, 2023) ("*Martinez* can only excuse the default of ineffective-assistance-of-counsel claims.") (citing *Davila v. Davis*, 582 U.S. 521, 525 (2017)).

And, finally, Peralta – in addition to claiming that his actual innocence is a gateway that excuses his procedural default – alleges a "freestanding actual innocence claim." Dkt. No. 27 at 49. But "[t]he Fifth Circuit does not recognize freestanding claims of actual innocence on federal habeas review." *In re Swearingen*, 556 F.3d 344, 348 (5th Cir. 2009) (citations omitted).

In sum, Peralta procedurally defaulted his insufficiency-of-the-evidence or no-evidence claim, shows neither cause and prejudice or a miscarriage of justice sufficient to excuse the procedural default, and is not entitled to federal habeas relief on this issue.

## Recommendation

The Court should deny Peralta's application for federal habeas relief.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate

judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

SO ORDERED.

September 28, 2023.

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE